OPINION *Page 2 
{¶ 1} Plaintiffs-appellants, Ronald M. and Joanne Nead, appeal the judgment of the Brown County Court of Common Pleas, denying their claims of medical malpractice against several physicians with regard to the treatment of Ronald Nead's foot injury.[1]
 {¶ 2} Appellant sustained an injury at a job site in August 1994, when he stepped on the head of nail protruding from concrete. Appellant sought treatment for the wound the same day and thereafter from a series of physicians.
 {¶ 3} In 1996, appellant filed a complaint against a number of the physicians, alleging that they failed to detect and remove foreign materials embedded in the wound. Appellant claimed that portions of his sock and rubber sole of his work boot were forced into the wound by the nail, and he sustained a permanent disability to his foot when osteomyelitis, a bone infection, resulted from the foreign materials left in the wound. The claims of Joanne Nead, appellant's wife, are principally related to loss of services, companionship, and income.
 {¶ 4} Defendant-appellee, Brown County General Hospital ("hospital"), was granted summary judgment and dismissed from the case in 2001. In August 2003, the case was tried before the bench, with the following participating defendants: appellees Miguel S. West, M.D.; Ira B. Husky, M.D.; Timothy McKinley, M.D.; J.W. Lee, M.D., and Linda Welder, M.D.[2]
 {¶ 5} After hearing evidence at trial, the trial court set a briefing schedule and issued a written decision in 2005. The trial court granted judgment in favor of all defendants remaining in the case, as to all claims. Appellant appealed the trial court's decision, presenting seven assignments of error for our review. We address these assignments of error out of order for ease of discussion. *Page 3 
 {¶ 6} Assignment of Error No. 2:
 {¶ 7} "THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY LIMITING TESTIMONY OF APPELLANT'S WITNESS."
 {¶ 8} Assignment of Error No. 3:
 {¶ 9} "THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY REFUSING TO PERMIT APPELLANTS TO REOPEN THEIR CASE AND/OR [SIC] REBUTTAL."
 {¶ 10} Appellant combined both assignments of error together, arguing that the trial court erred when it limited the testimony of Dr. George Shybut, appellant's treating surgeon, by precluding him from testifying as an expert witness on standard of care and proximate cause and by refusing to allow his rebuttal testimony.
 {¶ 11} The controversy over Dr. Shybut's status arose after defendants, citing unfair surprise, asked the trial court just before trial to preclude Dr. Shybut from testifying about standard of care and proximate cause. Appellees alleged that appellant's counsel forwarded a July 30, 2003 letter from Dr. Shybut, which suggested to them that Dr. Shybut would offer this specific testimony when no previous disclosure had been made that Dr. Shybut would testify as an expert witness on standard of care and proximate cause.
 {¶ 12} Standard of care and proximate cause issues arose in this case because a plaintiff, to establish medical malpractice, must show "by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things."Bruni v. Tatsumi *Page 4 
(1976), 46 Ohio St.2d 127, paragraph one of the syllabus.
 {¶ 13} In other words, expert testimony is used to show that the defendant-physician failed to adhere to the standard of care, and this failure to adhere to the standard of care proximately caused the plaintiff's injuries. See Berdyck v. Shinde, 66 Ohio St.3d 573, 579,1993-Ohio-183; Ramage v. Central Ohio Emergency Servs.,64 Ohio St.3d 97, 102, 1992-Ohio-109.
 {¶ 14} Civ.R. 26(E) provides that a party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows: A party is under a duty seasonably to supplement his response with respect to any question directly addressed to * * * the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify
 {¶ 15} The civil rules were designed to provide for full discovery of all pertinent nonprivileged evidence and to allow both parties to accurately assess the merits of their case prior to trial. Bailey v.Bailey, Clermont App. No. CA2004-02-017, 2004-Ohio-6930, ¶ 31, citing toJones v. Murphy (1984), 12 Ohio St.3d 84, 86.
 {¶ 16} A trial court may exclude expert testimony as a sanction for violating Civ.R. 26(E)(1). Jones at 85; see, generally, Civ.R. 37;Waste Mgt. of Ohio v Mid-America Tire, Inc. (1996), 113 Ohio App.3d 529,533 ("if discovery is to serve its purpose, the parties must be entitled, upon the unveiling of a contention, to a reasonable opportunity to prepare to defend against it").
 {¶ 17} However, exclusion of otherwise reliable and probative evidence is an extreme sanction for a discovery violation and a trial court should exclude evidence only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise. See Huebner v. Miles
(1993), 92 Ohio App.3d 493, 50; Nickey v. Brown (1982),7 Ohio App.3d 32, 34. *Page 5 
 {¶ 18} The trial court ruled that appellant's disclosure that Dr. Shybut would testify about standard of care and proximate cause was untimely and constituted unfair surprise. In support of its ruling, the trial court noted that the case was filed in 1996 and discovery deadlines expired in 2001. The trial court found that appellant had consistently named Dr. Robert Boscho as his expert witness and Dr. Shybut as the treating physician, but failed to disclose that Dr. Shybut would be asked to give standard of care and proximate cause opinions until ten days before the 2003 trial.
 {¶ 19} Appellant argues that the trial court should have permitted him to elicit this testimony from Dr. Shybut or should have been permitted him to reopen and recall Dr. Shybut to testify on those matters because no unfair surprise existed for the defendants.
 {¶ 20} Appellant avers that the defendants were always aware of Dr. Shybut's existence in the case as the treating physician and never deposed him, that the defendants had reserved throughout the case the right to call the treating physicians and any expert witness for any other party to the case, and that appellant had listed Dr. Shybut as an expert and treating physician when he answered an interrogatory early in the case.[3]
 {¶ 21} Appellees supported their assertion of unfair surprise by arguing to the trial court that appellant's counsel had previously indicated in writing, in reference to scheduling discovery depositions, that they had "no control over Dr.Shybut, as he is not in the capacity of an independent expert witness, but a treating physician. If you wish to depose him, I suggest you arrange the time and financial arrangements directly with Dr. Shybut's office."
 {¶ 22} This court reviews a trial court's decision on the imposition of discovery sanctions for an abuse of discretion. Nakoff v. FairviewGen. Hosp., 75 Ohio St.3d 254, *Page 6 1996-Ohio-159, syllabus (trial court has broad discretion when imposing discovery sanctions); see, also, Yaeger v. Fairview General Hosp. (Mar. 11, 1999), Cuyahoga App. No. 72361 (determination of whether the testimony results in a surprise at trial is a matter left to the sound discretion of the trial court); see Hurst v. Poelstra (Dec. 22, 1995), Miami App. No. 94-CA-61; Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St. 3d 83; Walker v. Holland (1997), 117 Ohio App.3d 775, 782 (treating physician identified as fact witness may not testify as expert on ultimate question unless identified as expert); Gillespie v. Iler (May6, 1996), Van Wert App. No. 15-95-8 (trial court did not abuse its discretion in limiting treating physician's testimony when disclosure that witness would testify as an expert was made day of trial).
 {¶ 23} In order to have an abuse of discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Vaught v. The Cleveland Clinic Found.,98 Ohio St.3d 485, 2003-Ohio-2181, ¶ 13; Nakoff at 256.
 {¶ 24} A judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice. O'Brien v. Angley, 63 Ohio St.2d 159, 164-165.
 {¶ 25} Appellant asserts that the trial court's decision to limit Dr. Shybut's testimony was prejudicial and reversible error. However, appellant has failed to show this court how he was prejudiced in this regard.
 {¶ 26} Appellant proffered that Dr. Shybut would have testified that the proper treatment of appellant's puncture wound was a fish-mouth incision and exploration to the depth of the wound to locate foreign material. Dr. Shybut was permitted to so testify. Dr. Shybot was also permitted by the trial court to testify that the surgery he performed was necessary to remove the foreign materials with the ongoing infection. Dr. Shybut also *Page 7 
testified that the foreign bodies left in the wound until his surgery led to the infection, which resulted in osteoarthritis and avascular necrosis.
 {¶ 27} What is significantly absent from appellant's proffer is the assertion that Dr. Shybut would have testified that he had the training, knowledge, and experience to testify as to the standards of care for emergency room physicians, surgeons, and primary care physicians. Appellant did not proffer that Dr. Shybut would have testified that the defendants in this case failed to adhere to their respective standards of care and this failure proximately caused appellant's injuries.
 {¶ 28} Appellant's proffer for Dr. Shybut was essentially covered by the witness in his testimony. While limiting testimony can be a harsh discovery sanction, under the facts of this case, we cannot find prejudice, and cannot say the trial court exhibited a perversity of will, a defiance of judgment, or an exercise of passion or bias when it decided to admit or exclude testimony from Dr. Shybut.,
 {¶ 29} In addition, for the reasons outlined above, we do not find that the trial court abused its discretion when it refused appellant's request to reopen his case to permit the testimony of Dr. Shybut on the same issues of standard of care and proximate cause.
 {¶ 30} The trial court's decision to deny appellant's motion to introduce rebuttal testimony was likewise not an abuse of discretion. See Brothers v. Morrone-O'Keefe Dev. Co., Franklin App. No. 05AP-161,2006-Ohio-1160, ¶ 6 (generally, admission of rebuttal testimony is a matter within the trial court's discretion, and a decision admitting or excluding such testimony will not be reversed absent an abuse of that discretion).
 {¶ 31} Appellant sought to rebut the testimony of defense witness, Dr. Marc Cooperman, with the testimony of Dr. Shybut. On cross-examination, appellant's counsel obtained statements from Dr. Cooperman that the witness believed Dr. Shybut's surgery on appellant was premature. *Page 8 
 {¶ 32} Rebuttal testimony is "given to explain, refute, or disprove new facts introduced into evidence by the adverse party [emphasis added]; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence."Brothers at ¶ 6, quoting State v. McNeill, 83 Ohio St.3d 438, 446,1998-Ohio-293.
 {¶ 33} A party has an unconditional right to present rebuttal testimony on matters that are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief. Phung v. Waste Mgt., Inc. 71 Ohio St.3d 408, 410,1994-Ohio-389; see, also, Weimer v. Anzevino (1997),122 Ohio App.3d 720, 726 (appellant may rebut evidence adverse to her side, but that evidence must be introduced by the opposing party and not by appellant herself).
 {¶ 34} A review of the record of the pertinent testimony reveals that Dr. Shybut testified that he performed appellant's surgery at the time and manner in which he did because he deemed it essential to properly treat and abate appellant's medical condition.
 {¶ 35} Appellant proffered that Dr. Shybut would be asked on rebuttal to detail his decision to perform appellant's surgery at the time he performed it. The trial court noted that Dr. Shybut's proposed rebuttal testimony would reiterate his testimony from appellant's casein-chief and would not be appropriate rebuttal testimony. See Mitchell v.Columbiana County Mental Health Center (Dec. 20, 2001), Columbiana App. No. 00 CO 46 (true rebuttal specifically rebuts issues first raised in defendant's case and concerning matters that should not have been raised in the plaintiff's case in chief; plaintiff's proposed rebuttal was merely reiteration of her expert's opinion and the opinions of her treating physicians).
 {¶ 36} The record and proffers support the trial court's finding. Accordingly, the trial court did not abuse its discretion by denying appellant's attempt to offer Dr. Shybut's rebuttal testimony.
 {¶ 37} Even though appellant argues the admissibility of the testimony of one witness *Page 9 
in his assignment of error, he asserts in the body of his brief errors by the trial court when it limited the testimony of two other witnesses, a home health-care nurse, Roger Eagle, and a radiologist, Dr. Jimmy Barnes.
 {¶ 38} Appellant does not assert that he previously disclosed that either Eagle or Barnes would provide any testimony other than fact testimony. We also note that nursing care was not an issue at trial. We have reviewed the record in reference to the sustained objections during the testimony of the home health-care nurse, Eagle, and do not find that the trial court abused its discretion in the exclusion of evidence offered by Eagle. See, e.g., Berdyck v. Shinde, 66 Ohio St.3d at 580
(because they are prohibited from practicing medicine, hospitals and nurses cannot pass on the efficacy of a course of treatment);Weisbecker v. Weisbecker, Butler App. No. CA2005-10-421, 2006-Ohio-5840, ¶ 20
(trial court has broad discretion in the admission or exclusion of evidence and, absent a clear abuse of discretion, a reviewing court will not disturb the trial court's decision).
 {¶ 39} Upon review of the pertinent portions of the record, we find that the trial court did not abuse its discretion in limiting the testimony of Dr. Barnes, as appellant failed to disclose that Dr. Barnes would be giving expert testimony on standard of care and proximate cause. See Vance v. Marion Gen. Hosp., 165 Ohio App.3d 615,2006-Ohio-146, ¶ 11-12. Accordingly, appellant's second and third assignments of error are overruled.
 {¶ 40} Assignment of Error No. 5:
 {¶ 41} "IT WAS ERROR FOR THE TRIAL COURT TO FIND DR. BUSCHO NOT COMPETENT TO TESTIFY AS TO DRS. LEE AND WELDER."
 {¶ 42} Appellant argues that the trial court erred when it did not consider his expert witness, Dr. Buscho, an emergency physician, competent to testify as an expert witness on the standard of care against the surgeons in the case.
 {¶ 43} The determination of whether a witness possesses the qualifications necessary *Page 10 
to give expert testimony and introduce evidence lies within the sound discretion of the trial court. Alexander v. Mt. Carmel Med. Ctr. (1978),56 Ohio St.2d 155, 157 (trial court vested with broad discretion in its determination of the competency of an expert witness); Akron v. Pub.Util. Comm. (1966), 5 Ohio St.2d 237, 242 ("expert must be qualified in the matters about which he is to testify"); see Evid.R. 104.
 {¶ 44} The general rule for expert medical witnesses is that: "the witness must demonstrate a knowledge of the standards of the school and specialty, if any, of the defendant physician which is sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards and not to the standards of the witness' school and or specialty if it differs from that of the defendant." Hudson v. Arias (1995), 106 Ohio App.3d 724,729; Bruni v. Tatsumi, 46 Ohio St.2d at 131-132 (expert must be qualified to express an opinion concerning the specific standard of care that prevails in the medical community in which the alleged malpractice took place).
 {¶ 45} The fact that the physician is of a different medical specialty does not prevent his or her testimony as an expert, but the expert must have sufficient knowledge, skill, experience, training and education in the subject matter of his testimony to satisfy Evid.R. 702.[4]Taulbee v. Dunsky, Butler App. No. CA2003-03-059, 2003-Ohio-5988, ¶ 15;Alexander, at 159-160 (scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of his qualifications; an expert witness need only aid the trier of fact in the search for the truth and need not be the best witness on the subject).
 {¶ 46} The admissibility of expert testimony must be made on a case-by-case basis, *Page 11 
reviewing the medical experts' knowledge, skill, experience, training, and education. Taulbee at ¶ 21.
 {¶ 47} Appellant argues that Dr. Buscho's testimony on the standard of care of surgeons in the case at bar was admissible because the fields of emergency medicine and surgery overlap.
 {¶ 48} When there is an overlap and a given procedure may be performed by more than one type of specialist, a witness may qualify as an expert in the medical malpractice action even when his practice is not in the same specialty as the defendants. Taulbee at ¶ 23, citing King v.LaKamp (1988), 50 Ohio App.3d 84, 85.
 {¶ 49} Appellant argues that Dr. Buscho should have been permitted to testify on a surgeon's standard of care in this case because Dr. Buscho taught surgical residents rotating through the emergency department how to evaluate and explore puncture wounds, treated puncture wounds and abscesses in the emergency room, and testified that the standard for draining abscesses would be the same for any physician.
 {¶ 50} The trial court found that Dr. Buscho is a board-certified emergency physician who testified that he has never treated a puncture wound of the foot that later developed osteomyelitis. The trial court noted that Dr. Buscho testified that he performs minor surgical procedures in the emergency room ("ER"), but rarely has an opportunity to follow up on patients he sees in the ER. The trial court noted that Dr. Buscho has never had any surgical training and has never practiced as a surgeon.
 {¶ 51} The trial court acknowledged there was overlap in regard to the treatment of puncture wounds, but concluded the cross-over "did not extend to the care and treatment rendered by Drs. Welder [and] Lee," and their professional company.
 {¶ 52} The determination of the trial court on this issue was a close call. However, we are required to determine whether the trial court's decision was so grossly violative of fact or *Page 12 
logic that it evidences the perversity of will, the defiance of judgment, or the exercise of passion or bias. See Vaught v. ClevelandClinic Found., 2003-Ohio-2181 at ¶ 13.
 {¶ 53} The surgeons in this case did not treat appellant's initial injury in an emergency room setting, but were called in days after the injury to evaluate a foot that was inflamed and had developed an abscess. The surgeon testified that she understood she was called in to perform an incision and drainage of the abscess, which she found on the top of appellant's foot. The witness testified that her treatment included packing the wound to remove any foreign materials, but she would not explore the wound because appellant's foot was "terribly inflamed."[5]
 {¶ 54} Appellant's expert asserted that he could testify that all of the different medical specialties represented in this case deviated from their respective standards of care when they failed to explore the wound to its maximum depth in an effort to detect foreign materials.
 {¶ 55} The trial court distinguished between the general treatment of puncture wounds and abscesses, and the time, circumstances and conditions present when the surgeons in this case were called upon to render the services of their medical specialty.
 {¶ 56} We cannot find that the trial court abused its discretion when it found that, given Dr. Buscho's lack of training and practice in the field of surgery, Dr. Buscho failed to demonstrate a knowledge of the standards of the school and specialty of a surgeon sufficient to enable him to give an expert opinion as to the conformity of the surgeons' conduct to the standards of surgeons under the facts of this case. Appellant's fifth assignment of error is overruled. *Page 3 
 {¶ 57} Assignment of Error No. 6:
 {¶ 58} "THE TRIAL COURT ERRED IN PERMITTING TESTIMONY OF DR. COOPERMAN."
 {¶ 59} Dr. Mark Cooperman was offered as an expert witness by the surgeons involved in this case. Appellant argues that under the requirements of Evid.R. 601(D), Dr. Cooperman was not competent to testify because he spent less than one-half of his professional time in his field of licensure. Evid.R. 601 states that "[e]very person is competent to be a witness except:
 {¶ 60} "* * *
 {¶ 61} "(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, * * * arising out of the diagnosis, care, or treatment of any person by a physician * * * unless the person testifying is licensed to practice medicine and surgery, * * * by the state medical board or by the licensing authority of any state, and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school. * * *."
 {¶ 62} The phrase "active clinical practice," involves treating patients, and also includes the physician-specialist whose "work is so related or adjunctive to patient care as to be necessarily included in that definition for the purpose of determining fault or liability in a medical claim." Goldstein v. Kean (1983), 10 Ohio App.3d 255, 256, quoting McCrory v. State (1981), 67 Ohio St.2d 99, 104.
 {¶ 63} The determination of whether a medical witness is competent to testify lies within the sound discretion of the trial court, and will not be reversed unless there is a clear showing that the court abused its discretion. Campbell v. Warren Gen. Hosp. (1994),105 Ohio App.3d 417, 421. *Page 14 
 {¶ 64} According to the record, Dr. Cooperman is a board-certified general surgeon who had an extensive practice in surgery in the Columbus area when appellant sustained his injury and this lawsuit was filed in the 1990s. In 2001, Dr. Cooperman suffered a heart attack and curtailed his surgical duties. Dr. Cooperman testified at trial that he still sees patients three hours per week in the office, works with patients while doing hospital rounds, was beginning to perform pre-and post-operative evaluations and minor surgical procedures for the Veterans Administration Clinic, administers disability evaluations with patients, and is a clinical assistant professor at the medical school at Ohio State University.
 {¶ 65} The trial court noted that the competency requirements of Evid.R. 601(D) ensure that the witness has the "experiential background" in the field he or she seeks to judge, and should preclude the witness who earns his or her living testifying against others as a professional witness. See McCrory at 103. The trial court proceeded to find Dr. Cooperman competent to testify as an expert in the field of general surgery and admitted his testimony.
 {¶ 66} After reviewing the record, we find no abuse of discretion in the finding that Dr. Cooperman was qualified to testify as an expert in general surgery. Dr. Cooperman was qualified to testify through the term in which this lawsuit was pending, and continued to be qualified through his active clinical practice at the time he testified. See Lovejoy v.Hopkins, Summit App. No. 20490, 2001-Ohio-1367, appeal not allowed,94 Ohio St.3d 1433, 2002-Ohio-5651 (pertinent time frame for the active clinical practice requirement of Evid. R. 601 [D] is the time of testimony); see, also, Ratliff v. Stewart (July 24, 1989), Butler App. No. CA88-07-109; but, see, Aldridge v. Garner, 159 Ohio App.3d 688,2005-Ohio-29, ¶ 18 (based upon physician's length of practice and fact he was engaged in active clinical practice at the time relevant to lawsuit, physician's experience satisfies purpose of Evid.R. 601[D] and trial court's strict interpretation of present-tense requirement in Evid.R. 801[D] is unreasonable). *Page 15 
 {¶ 67} Appellant's sixth assignment of error is overruled.
 {¶ 68} Assignment of Error No. 7:
 {¶ 69} "THE TRIAL COURT ERRED IN REFUSING ANY EXAMINATION INVOLVING LEARNED TREATISES."
 {¶ 70} Appellant cites to Evid.R. 706 in arguing that the trial court should have permitted him to examine a witness with learned treatises.[6] In support of his argument, appellant cites to a series of questions posed on cross-examination of Dr. Earl Scheidler, who was testifying as an expert witness for one of the appellees.
 {¶ 71} Accordingly, our review is limited to the portions of the record cited by appellant in his appellate brief since that is the only portion of the record identified as error by appellant. See App.R. 12(A)(2) (appellate court may disregard an assignment of error presented for review if party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief).
 {¶ 72} According to Evid.R. 706, "[statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following: (A) relied upon by an expert witness in reaching an opinion; (B) established as reliable authority (1) by the testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice. If admitted for impeachment, the statements may be read into evidence but shall not be received as exhibits."
 {¶ 73} The scope of cross-examination and the admissibility of evidence during cross-examination are matters that rest in the sound discretion of the trial judge. O'Brien v. Angley *Page 16 
(1980), 63 Ohio St.2d at 163.
 {¶ 74} It is generally recognized that the trial court's discretion in regulating the admissibility of evidence includes controlling how learned treatises may be used in the cross-examination of expert witnesses. O'Brien. When the trial court determines that certain evidence will be admitted or excluded from trial, it is well-established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion. Id.
 {¶ 75} A foundation must be laid when scholarly statements or treatises are used to impeach a witness. Allison v. Daniels, Mahoning App. No. 01 CA 86, 2002-Ohio-5027, ¶ 54; see, generally, Freshwater v.Scheidt, 86 Ohio St.3d 260, 1999-Ohio-161.
 {¶ 76} According to the record cited by appellant, appellant's counsel asked Dr. Scheidler whether he reviewed any literature in regard to puncture wounds to the feet from any family practice publications.
 {¶ 77} "A: Not specifically. I read a lot of things about puncture wounds in the past —
 {¶ 78} "Q: Okay.
 {¶ 79} "A: and their ominous conclusions.
 {¶ 80} "Q: And their?
 {¶ 81} "A: Ominous outcomes —
 {¶ 82} "Q: Okay. What do you mean —
 {¶ 83} "A: — and conclusions.
 {¶ 84} "Q: What do you mean by that?
 {¶ 85} "A: That puncture wounds are one of the worse types of injury that you can have.
 {¶ 86} "Q: Okay. And they become more complicated, do they not, when there has *Page 17 
been a rubber sole?
 {¶ 87} "[Defense]: Objection, Your Honor. She's clearly trying to ask this witness questions about literature. This — this witness has not testified that he's found any literature, that there-first of all, he's ready any [sic] —
 {¶ 88} "Judge: Sustained.
 {¶ 89} "Q: All right. I think that's it. Thank you."
 {¶ 90} Appellant later proffered the titles of numerous publications that he asserted included journals "which the Defendants have considered to be ones that are within their profession and which they read and from text which the witnesses have indicated have been authoritative * * *."
 {¶ 91} However, appellant failed to cite to the portions of the record that supported his statement that his proffered publications were considered in the profession and read, and found authoritative by appellees or witnesses, and therefore, we cannot assume this assertion has merit.
 {¶ 92} From the record cited by appellant, we find that appellant failed to adequately lay a foundation to cross-examine Dr. Scheidler on any of the publications appellant would later proffer. Appellant failed to ask the trial court to permit him additional questions to lay a foundation with this witness or to further develop the record in that regard. Appellant failed to call to the trial court's attention previous witnesses who had established these publications as reliable authority, so the publications could be used to cross-examine Dr. Scheidler. See Evid.R. 706.
 {¶ 93} And finally, appellant has not shown this court how he was prejudiced when he was not permitted to use medical publications in the cross-examination of Dr. Scheidler. Appellant's seventh assignment of error is overruled. *Page 18 
 {¶ 94} Assignment of Error No. 4:
 {¶ 95} "THE TRIAL COURT ERRED BY REFUSING [SIC] TESTIMONY OF A TREATING ORTHOPEDIC SURGEON IN REGARD TO PERCENTAGE OF IMPAIRMENT AND DISABILITY ON BASIS THAT AMERICAN MEDICAL ASSOCIATION GUIDES TO PERMANENT IMPAIRMENT ARE HEARSAY."
 {¶ 96} Appellant argues that he was not permitted to introduce testimony through Dr. Shybut that he had a certain percentage of permanent disability according to the American Medical Association guidelines, when the trial court sustained objections to testimony about the guidelines.
 {¶ 97} As previously noted, the admission or exclusion of evidence at trial is within the trial court's broad discretion and will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice. O'Brien v.Angley, 63 Ohio St.2d at 164-165.
 {¶ 98} Appellant has not informed this court how he was prejudiced by the trial court's ruling to sustain objections to testimony regarding the guidelines. Dr. Shybut was permitted to testify about the nature of appellant's foot injuries and the fact that appellant has a permanent disability. Under the facts of this case, we do not find that the trial court's ruling affected appellant's substantial rights or was inconsistent with substantial justice. Appellant's fourth assignment of error is overruled.
 {¶ 99} Assignment of Error No. 1:
 {¶ 100} "THE TRIAL COURT ERRED IN GRANTING A MOTION FOR SUMMARY JUDGMENT TO BCGH [BROWN COUNTY GENERAL HOSPITAL]."
 {¶ 101} Appellant argues that the trial court erred in granting summary judgment to the hospital because the hospital was liable for the alleged negligence of two emergency room physicians and a radiologist who worked in the hospital and were named defendants in this *Page 19 
case at its inception.[7]
 {¶ 102} We will first consider appellant's contention that the hospital can be held liable in this action because it engaged in a joint venture with the three physicians.
 {¶ 103} A joint venture arises from an express or implied contractual association of parties with the common purpose of carrying out a single business venture for their mutual profit, for which they combine their efforts, property, money, skill and knowledge without creating a partnership or a corporation. Al Johnson Constr. Co. v. Kosydar (1975),42 Ohio St.2d 29, 32. Other factors that must be present include a joint property interest in the subject matter of the venture and a right of mutual control or management of the enterprise; expectation of profits, a right to participate in the venture, and, usually, a limitation of the objective to a single undertaking. Mahan v. Bethesda Hosp., Inc. (1992),84 Ohio App.3d 520, 528.
 {¶ 104} Applying the applicable standard of review on summary judgment,[8] we find appellant presented no evidence regarding the existence of a joint venture between or among the parties, and therefore, no genuine issue of material fact remained, and reasonable minds could only conclude that no joint enterprise existed among the parties at issue. Funk v. Hancock (1985), 26 Ohio App.3d 107, 109-110; see, also, Mahan.
 {¶ 105} Appellant next argues that the trial court erred in granting summary judgment because the hospital is liable on the theory of agency by estoppel when appellant looked to the hospital to provide his medical care and the hospital did not adequately inform him that the physicians working in the hospital were independent contractors and not agents or employees of the hospital. *Page 20 
 {¶ 106} Generally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior, but not for the negligence of an independent contractor over whom it retained no right to control the mode and manner of doing the contracted-for work. Clark v. Southview Hosp. Family Health Ctr.,68 Ohio St.3d 435, 438, 1994-Ohio-519.
 {¶ 107} However, a hospital may be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital when it holds itself out to the public as a provider of medical services, and, in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care. Clark, syllabus.
 {¶ 108} The hospital maintains that appellant signed the hospital's consent for treatment form before he received treatment on both visits to the emergency room of the hospital. The hospital argues that the document informed appellant that the hospital physicians were independent contractors and not hospital employees or agents.[9]
 {¶ 109} An agent who commits a tort is primarily liable for its actions, while the principal is merely secondarily liable. Losito v.Kruse (1940), 136 Ohio St. 183. If there is no liability assigned to the agent, it follows that no liability can be imposed upon the principal for the agent's actions. Radcliffe v. Mercy Hosp. Anderson (May 14, 1997), Hamilton App. Nos. C-960424, 960425; see, also, Comer v.Risko, 106 Ohio St.3d 185, 2005-Ohio-4559.
 {¶ 110} Summary judgment was granted to the hospital in this case in 2001. After that decision, the radiologist was voluntarily dismissed in 2003, with no record that appellant filed another action against her. The emergency room physicians went to trial and were found not *Page 21 
liable in 2005. We are now presented with a situation in which no agents or implied agents of the hospital remain to be liable for which the hospital could be secondarily liable.
 {¶ 111} The Ohio Supreme Court has stated that the duty of a reviewing court is to decide actual controversies by a judgment that can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law that cannot affect the matter in issue in the case. Miner v. Witt (1910),82 Ohio St. 237, 238.
 {¶ 112} Accordingly, we need not decide the summary judgment issue because such decision would not change the outcome of this case and there is no remedy this court can grant appellant on this issue. SeeAndonian v. A.C. S, Inc. (1994), 97 Ohio App.3d 572, 575-576 (appellant posed question that no longer affects his situation; as court will not issue an advisory opinion, court would not issue a decision that does not affect the case before it).
 {¶ 113} Accordingly, appellant's first assignment of error is overruled.
 {¶ 114} Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] We will hereinafter refer to Ronald Nead as the appellant.
[2] Also listed as defendants-appellees are Sardinia Medical Center, East Surgical Group, Inc., Brown County Emergency Services, Inc., and Cincinnati Emergency Services, Inc., which are professional corporations or entities with which the physicians are or were alleged to be affiliated or employed.
[3] The interrogatory to which appellant refers asks the name and address of each person whom plaintiff intends to call as an expert witness and for each expert, state the subject matter on which the expert is expected to testify, a summary of that expert's opinion, and the expert's education and training, etc. Appellant responded by answering, "a, b.c answered together — In addition to treating physician, Dr. Buscho is expected to testify as to deviations from care and proximate cause of injury. His C.V. has already been supplied to you."
[4] According to Evid.R. 702, a witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
[5] The other surgeon in this case, Dr. Lee, would testify that he saw appellant on rounds the next day for the surgeon who performed the procedure, but appellant did not want him to look at his foot. Appellant's testimony clearly disputed Dr. Lee's version of those events.
[6] 6. We note that the trial court did not have the benefit of the guidance offered on learned treatises by the decision in Beard v.Meridian Huron Hosp., 106 Ohio St.3d 237, 2005-Ohio-4787, which was released well after the 2003 trial and more than a month after the trial court's judgment was rendered.
[7] In 2003, the radiologist, Dr. Julie Farrell, and her professional company were voluntarily dismissed from the case by appellant before the August trial.
[8] This court reviews matters decided on summary judgment de novo, governed by the standard set forth in Civ.R. 56. Vance v. AkersPackaging Service Inc., Butler App. No. CA2006-05-105, 2006-Ohio-7032, ¶ 13.
[9] We note that neither party appeared to dispute for purposes of summary judgment that the emergency care physicians were independent contractors. We also note that the consent form only mentioned the emergency room physicians. The status of the radiologist is less clear, but, for purposes of this appeal, this issue will be reviewed under the premise that the radiologist was an agent of the hospital through an actual or implied agency. *Page 1