OPINION
{¶ 1} Plaintiff-appellant, Lois P. Taulbee, appeals a decision of the Butler County Court of Common Pleas limiting the testimony of her expert witness in a medical malpractice case and granting a directed verdict in favor of defendants-appellees, Martin Dunsky and Kirk Smith.
 {¶ 2} On May 13, 2000, appellant took her husband, Alan Taulbee, to Middletown Regional Hospital because he was complaining of severe chest pain. He was evaluated by a nurse, then was seen by emergency room physician Martin Dunsky. Dr. Dunsky diagnosed chest wall pain, gave Taulbee pain medication, and advised him to see his family physician in a few days if the condition did not improve.
 {¶ 3} When his condition failed to improve by May 16, Taublee consulted his family physician, Dr. Kirk Smith. Smith diagnosed gastroesophageal reflux disease and gave Taulbee Prevacid to take. Taulbee contacted Dr. Smith's office the following morning to advise them that the Prevacid was not working. Dr. Smith told Taulbee he needed to give the medicine time to work, and decided to schedule a test to evaluate what he thought might be a heart murmur.
 {¶ 4} Taulbee died suddenly at home on May 18. An autopsy revealed that the cause of death was a ruptured aortic dissection, which is caused by the tearing of an inside lining of the artery. Appellant filed a medical malpractice action against both Dr. Dunsky and Dr. Smith alleging failure to diagnose the aortic dissection.
 {¶ 5} A trial began on January 27, 2003. On the third day of trial, appellant presented the testimony of Dr. Alan Markowitz as a medical expert. Dr. Markowitz testified regarding his credentials and experience in diagnosing and treating aortic dissections. However, when Dr. Markowitz was questioned regarding his opinion on the standard of care, counsel for both Dr. Smith and Dr. Dunsky objected on the basis that Dr. Markowitz, a cardiothoracic surgeon, was not qualified to testify regarding the standard of care of an emergency room physician and a family practitioner.
 {¶ 6} After discussing the objection with counsel, the trial court held a hearing outside the presence of the jury to determine whether Dr. Markowitz was qualified to testify regarding the standard of care applicable to the two physicians. After considering the testimony presented, the trial court found that Dr. Markowitz was not qualified to testify regarding the standard of care to be applied to an emergency care physician or a family practitioner in making a diagnosis of an aortic dissection. Appellant then rested its case. Drs. Smith and Dunsky moved for a directed verdict. The trial court granted a directed verdict in favor of Smith and Dunsky on the grounds that appellant had failed to establish that either of the physicians deviated from the required standard of care.
 {¶ 7} Appellant now appeals the trial court's decisions that Dr. Markowitz was not qualified to testify to the applicable standards of care and to grant a directed verdict. Appellant raises the following single assignment of error for our review:
 {¶ 8} "The Trial Court Erred By Ruling As A Matter Of Law That Plaintiff-appellant's Expert Witness, Alan Markowitz, M.D., Was Not Competent To Give Opinion Testimony Regarding The Issue Of Whether Defendant[sic]-appellees Deviated From The Standard Of Care In Their Evaluation And Treatment Of Alan S. Taulbee."
 {¶ 9} Dr. Markowitz, a board certified cardiothoracic surgeon, testified regarding his credentials and his experience. His practice concentrates on adult cardiac surgery. He stated that he is also consulted by physicians to evaluate patients who are suspected of aortic dissection. He discussed precisely what an aortic dissection is, the cause and the treatment. He further discussed the probability that Taulbee would have survived if the dissection had been diagnosed earlier. Appellees did not object to Dr. Markowitz's testimony as an expert until he was questioned regarding his knowledge of the standard of care as applicable to emergency room physicians and family physicians.
 {¶ 10} Evid.R. 702 permits the use of expert testimony and provides as follows:
 {¶ 11} "A witness may testify as an expert if all of the following apply:
 {¶ 12} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 13} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 14} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."
 {¶ 15} In the context of a medical malpractice action, the witness must demonstrate that he is familiar with the standard of care applicable to the defendant-physician's school or specialty, "sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards and not to the standards of the witness' school and, or, specialty if it differs from that of the defendant." Alexander v. Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155,160. The witness need not practice in the same specialty as that of the defendant-physician. Id. at 158. Rather, "it is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of his qualifications." Id. at 160. "The mere fact that a physician is of a different medical specialty than the defendant physician, does not prevent his or her testimony as an expert *** but an expert witness must have sufficient knowledge, skill, experience, training and education in the subject matter of his or her testimony to satisfy Evid.R. 702." Ratliff v. Morehead (May 19, 1998), Scioto App. No. 97CA2505.
 {¶ 16} An expert witness need only aid the trier of fact in the search for the truth and need not be the best witness on the subject. See, Ishler v. Miller (1978), 56 Ohio St.2d 447, 453 (stating that "the test of admissibility is whether a particular witness offered as an expert will aid the trier of fact in the search of the truth, not whether the expert witness is the best witness on the subject").
 {¶ 17} Although the witness need not have performed the exact procedure at issue to qualify the witness as an expert, simply working with doctors in the defendant-physician's specialty ordinarily is not, standing alone, sufficient to qualify the witness as an expert. McKinneyv. Schlatter (1997), 118 Ohio App.3d 328. Instead, the witness also must demonstrate some degree of knowledge, skill, experience, training, or education in the field the witness seeks to evaluate. Id.
 {¶ 18} A trial court's ruling on a witness's qualification or competency to testify as an expert will ordinarily not be reversed on appeal unless there is a clear showing that the court abused its discretion. Alexander, 56 Ohio St.2d at 155. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. See State ex rel. Lee v. Montgomery, 88 Ohio St.3d 233,235, 2000-Ohio-316.
 {¶ 19} The trial court was unconvinced that Dr. Markowitz was familiar with the standard of care expected of appellees, an emergency room doctor and a family physician. The trial court based its decision in part on this court's decision in McKinney v. Schlatter (1997),118 Ohio App.3d 328.
 {¶ 20} In McKinney, this court affirmed the trial court's decision excluding the testimony of a cardiovascular thoracic surgeon called to testify as to the standard of care expected of an emergency room physician. This court found that the trial court did not abuse its discretion when it concluded that the evidence in the record did not indicate that the surgeon had any specialized knowledge, skill, experience, training or education in emergency medicine.
 {¶ 21} Appellant argues that the trial court erroneously interpreted McKinney's holding as requiring that an expert witness be in the same specialty as the defendant. We note that the McKinney decision does not stand for the proposition that a cardiovascular surgeon will never be competent to provide expert testimony as to the standard of care of an emergency room or family physician. Rather, the admissibility of expert testimony must be made on a case-by-case basis, reviewing the medical expert's knowledge, skill, experience, training and education, not on comparison of his title with that of the defendant doctor. A review of the record reveals that the trial court repeatedly stated the correct standard and applied the correct standard. The trial court made it clear that it was not excluding Dr. Markowitz's testimony because of his specialty, but because he had not provided sufficient evidence to show that he was familiar with the standard of care applied to emergency room physicians and family care practitioners.
 {¶ 22} The record shows that Dr. Markowitz worked in an emergency room during his residency in the 1970s. However, since 1978 he has worked exclusively as a surgeon. He testified that he works with emergency room doctors on a weekly, if not daily, basis assisting them with diagnoses. However, his involvement in diagnosis comes at a point where aortic dissection is already strongly suspected as a diagnosis. He stated that it has been over 20 years since he worked as the type of doctor to whom a patient seeking treatment presents his complaints and symptoms. Thus, he does not have recent experience interfacing with patients who come into the emergency room or doctor's office with general complaints of chest pain. He also admitted that emergency medicine encompasses more than just cardiothoracic surgery and chest disease, and that the training is far different. He stated that he has never performed the duties of a family physician.
 {¶ 23} Appellant also argues that the testimony is admissible because the fields of medicine overlap. "Where fields of medicine overlap and a given procedure may be preformed by more than one type of specialist, a witness may be qualified as an expert in a medical malpractice action even though his practice is not in the same specialty as the defendant." King v. LaKamp (1988), 50 Ohio App.3d 84.
 {¶ 24} While physicians from several fields may be able to diagnose an aortic dissection, the trial court found that Dr. Markowitz was not qualified to testify regarding the standard of care applicable to an emergency room physician or a family doctor when presented with initial complaints of chest pain. The trial court noted that Dr. Markowitz was highly qualified to diagnose and treat aortic dissections. However, his involvement as a cardiothoracic surgeon comes at a much later point in the clinical picture than the situation where a person initially consults a physician for problems.
 {¶ 25} Given all the evidence above, we cannot say that it was an abuse of discretion for the trial court to find Dr. Markowitz did not have sufficient knowledge, skill, experience, training and education in the fields of emergency medicine or family medicine to be able to testify regarding the standard of care in diagnosing an aortic dissection. While there was evidence that lends support to appellant's position, there was also sufficient evidence from which the trial court could determine that he was not qualified. Thus, we find that the trial court's decision was not unreasonable, arbitrary or unconscionable. See Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. A medical malpractice plaintiff must produce expert testimony that the defendant deviated from the applicable standard of care. Bruni v. Tatsumi (1976), 46 Ohio St.2d 127,131-32. Because appellant failed to produce this testimony, the trial court did not err in granting a directed verdict. See Civ.R. 50(A)(4).
 {¶ 26} Judgment affirmed.