OPINION
{¶ 1} Plaintiffs-appellants Michael and Dawn Flinn appeal the Columbiana County Court of Common Plea's grant of summary judgment in favor of defendant-appellee Dr. Henry Parcinski. The issue presented in this case is whether Dr. Oluyemisi Sangodeyi offered proper expert testimony as to causation, which if considered by the trial court, presented a genuine issue of material fact as to whether Dr. Parcinski's negligent care and treatment proximately caused Michael Flinn to lose his right great (big) toe. For the reasons stated below, the judgment of the trial court is hereby affirmed.
 STATEMENT OF FACTS {¶ 2} While at work on March 29, 2000, Flinn's right foot was crushed by an 1800-pound piece of steel, causing damage to his toes, including his great toe. Flinn was taken to East Liverpool City Hospital where he was treated by emergency room Dr. Mark Swift. Due to the extent of the injuries and the need for tendon repair, Dr. Swift contacted the on-call orthopedist Dr. Parcinski for consultation. Dr. Parcinski was not in the emergency room at the time, thus the consultation occurred over the phone. (Swift Depo. 13).
 {¶ 3} Dr. Parcinski instructed Dr. Swift to loosely suture the right great toe and apply a splint. (Swift Depo. 16). Once this procedure was completed, Flinn was sent home with instructions to see Dr. Parcinski the next day for possible tendon repair in the right great toe. However, later that same day, Flinn returned to the emergency room complaining of increased discoloration of his right great toe. (Swift Depo. 22). Dr. Parcinski was at the emergency room for this visit. After examining the toe, Dr. Parcinski sent Flinn home and scheduled a follow-up appointment for April 3, 2000, for possible surgical repair to the tendon if the toe was not too swollen. The surgical repair did not occur on the scheduled follow-up appointment because the toe was too swollen. Another follow-up appointment was scheduled for April 10, 2000.
 {¶ 4} Prior to the April 10, 2000 appointment, Flinn went to see Dr. Sangodeyi for a second opinion. Dr. Sangodeyi referred Flinn to Dr. Collier, a vascular surgeon. Dr. Collier examined Flinn and stated that Dr. Parcinski wisely chose to defer the surgery due to the swollen nature of the toe. Flinn canceled his appointment with Dr. Parcinski and returned to Dr. Sangodeyi's office on April 10, 2000. Dr. Sangodeyi amputated the distal segment of Flinn's right great toe on April 12, 2000.
 {¶ 5} On July 20, 2001, Flinn brought a claim for medical malpractice against Dr. Parcinski, Metropolitan Orthopedics, P.C., East Liverpool City Hospital, and Dr. Swift. After discovery, Dr. Parcinski and the other named defendants filed motions for summary judgment. On August 27, 2003, the court entered summary judgment for Dr. Parcinski stating that Flinn was unable to establish that Dr. Parcinski was the proximate cause of his claimed injury.[1] Flinn timely appealed raising one assignment of error.
 ASSIGNMENT OF ERROR {¶ 6} "The trial court erred in determining that plaintiff did not meet its burden of showing proximate cause against dr. parcinski's negligent actions."
 {¶ 7} We review a grant of summary judgment de novo. Doe v.Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186. Flinn was entitled to prevail on his summary-judgment motion only if (1) there was no genuine issue of material fact, (2) he was entitled to judgment as a matter of law, and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of Dr. Parcinski, and that conclusion was adverse to Dr. Parcinski. Grafton v. Ohio Edison,77 Ohio St.3d 102, 105, 1996-Ohio-336.
 {¶ 8} In order to establish a cause of action for medical malpractice, Flinn was required to prove by a preponderance of the evidence the following: (1) the standard of care recognized by the medical community; (2) the failure of Dr. Parcinski to meet the requisite standard of care; and (3) a direct causal connection between the medically negligent act and the injury sustained. Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, paragraph one of the syllabus.
 {¶ 9} In the August 27, 2003 journal entry, the court stated that Flinn "sustained his burden of showing the standard of care." Flinn had shown through expert testimony that the standard of care required Dr. Parcinski to refer him to a microvascular surgeon. 8/27/03 J.E. The court went on to explain that Dr. Parcinski deviated from that standard of care when Dr. Parcinski did not refer Flinn to a microvascular surgeon. Thus, the first two elements of medical malpractice were met. However, regarding the third element, causation, the trial court held that Flinn failed to sustain his burden. The trial court stated that nowhere in the report or deposition of Dr. Jolin was there an expert opinion about proximate cause. 8/27/03 J.E. As to Dr. Sangodeyi, Flinn's other expert, the trial court stated that none of his testimony qualified "as an expert opinion to a reasonable degree of medical certainty on the issue of whether the intervention of microvascular surgeon would have saved the toe." 8/27/03 J.E. Flinn finds fault with this determination and argues that Dr. Sangodeyi offered expert testimony as to causation that was based upon a reasonable degree of medical certainty, and thus Dr. Parcinski's motion for summary judgment should not have been granted.
 {¶ 10} Under Civ.R. 56, a court deciding a summary judgment motion is to consider only the types of evidence permitted by the rule. Supporting or opposing affidavits or depositions "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence." Civ.R. 56(C). Evid.R. 702 sets forth the requirements for admissible expert testimony. It states in pertinent part:
 {¶ 11} "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *"
 {¶ 12} In medical malpractice cases, expert testimony is needed to show not only the standard of care and a deviation from that standard of care, but also to show causation. Roberts v.Ohio Permanente Med. Group, Inc., 76 Ohio St.3d 483, 485,1996-Ohio-375 (stating that generally a party is required to "prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence"). Thus, an expert's testimony as to the standard of care, deviation from that standard of care, and causation was needed because those issues involve matters beyond the knowledge of a layperson. As a result, it is clear that section (A) of Evid.R. 702 was met.
 {¶ 13} However, in order to establish standard of care, deviation from the standard of care, and proximate cause, the plaintiff must provide the competent testimony of a medical expert. Id. Evid.R. 702(B) requires a witness to be qualified as an expert by the specialized knowledge, skill, experience, training or education. Dr. Sangodeyi has a specialty in general surgery. (Sangodeyi Depo. 4). He has no specialty, nor has he practiced, in the microvascular area. Yet, despite this, his testimony could still qualify as an expert opinion as to causation if he had sufficient knowledge, skill, experience, training, and education in the subject matter of his testimony.Taulbee v. Dunsky, 12th Dist. No. CA2003-03-059,2003-Ohio-5988, at ¶ 16, citing Ishler v. Miller (1978),56 Ohio St.2d 447, 453 (stating that the expert witness does not need to be the best witness on the subject in order to qualify as an expert witness).
 {¶ 14} Therefore, the testimony given by Dr. Sangodeyi at his deposition must have demonstrated that he had some degree of knowledge, skill, experience, training, or education in the field he sought to render an expert opinion. Taulbee, 2003-Ohio-5988, at ¶ 17, citing McKinney v. Schlatter (1997),118 Ohio App.3d 328. During the deposition, Dr. Sangodeyi stated that had Flinn been referred to a microvascular surgeon earlier there was a 51% chance that the great toe would have been salvageable. (Sangodeyi Depo. 14). He stated that this opinion is based upon the fact that there would be an increased blood supply to the toe. (Sangodeyi Depo. 14). But when asked what he believed a vascular surgeon would have done he answered that he "did not know what a vascular surgeon would have done, but tried to evaluate and see whether there was a need to revascularize this toe." (Sangodeyi Depo. 18). He then admitted that he did not know whether Flinn would have been a good candidate for microvascular surgery and that would have been something a vascular surgeon would have to determine. (Sangodeyi Depo. 18). He was then asked whether he could state with a reasonable degree of medical probability whether the microvascular surgeon would have attempted to revascularize Flinn's toe. (Sangodeyi Depo. 18-19). He answered that he did not know. (Sangodeyi Depo. 19).
 {¶ 15} From the above testimony it is clear that he rendered an opinion that had Flinn been referred to a vascular surgeon promptly there was a 51% chance that the toe could have been saved. However, the above testimony also demonstrates that he does not have the knowledge to render this as an expert opinion. In this testimony he was never asked how many times he had seen an injury like this and how many times he was right that revascularization was a possibility. In fact, he admitted that he did not know whether a microvascular surgeon would have attempted to revascularize Flinn's toe. Thus, Evid.R. 702(B) was not met and, therefore, the trial court did not err in finding that Dr. Sangodeyi's opinion did not qualify as an expert opinion as to causation.
 {¶ 16} Regardless, even if we could determine section (B) was met, clearly section (C) of Evid.R. 702 was not met. This section requires the testimony to be based on reliable, scientific, technical or other specialized information. Evid.R. 702(C). The deposition is devoid of any indication that his testimony as to causation was based upon any of the factors listed above. The following discussion occurred between Dr. Sangodeyi and counsel for Dr. Parcinski as to why Dr. Sangodeyi believed that had Flinn been referred to a vascular surgeon there would have been a 51% chance that the toe would have been salvageable:
 {¶ 17} "Q. So, 51-percent chance it would have made a difference?
 {¶ 18} "A. Correct.
 {¶ 19} "Q. Why do you believe it would have made a difference, Doctor?
 {¶ 20} "A. Because I believe so. I don't have any more reason to tell you any more than that.
 {¶ 21} "Q. You can't give me any basis for why it would have made a difference other than that's your opinion?
 {¶ 22} "A. That's my opinion." (Sangodeyi Depo. 41).
 {¶ 23} This testimony in no way indicates that his opinion is based upon reliable, scientific, technical, or other specialized knowledge. He merely states that it is his opinion and provides no basis for it. The United States Supreme Court has stated that a court does not abuse its discretion in disregarding opinion evidence that is connected to the existing data only by the ipse dixit (a bare assertion resting on the authority of an individual) of the expert. General Elec. Co., v. Joiner (1997),522 U.S. 136, 146. It reasoned that neither the Federal Rules of Evidence nor Daubert v. Merrell Dow Pharmaceuticals, Inc.
(1993), 509 U.S. 579, requires the admittance of this type of evidence. Id. Likewise, having found no requirement in the Ohio Rules of Evidence that assertions made but not proven have to be admitted into evidence as expert opinion, we find that the trial court did not err in determining that his testimony as to causation was not reliable, scientific testimony and therefore, would not be considered an expert opinion on causation.
 {¶ 24} Having determined that the trial court did not abuse its discretion, we must now turn our analysis to whether there was any other evidence on the record as to causation that when viewed in the light most favorable to Flinn would render the trial court's grant of summary judgment erroneous. After reviewing all deposition testimony, it is clear that Flinn failed to sustain his burden to show that a genuine issue of material of fact existed as to causation. The depositions are completely devoid of any indication that Dr. Parcinski's deviation from the standard of care proximately caused Flinn's injury. Consequently, we find no error with the trial court's grant of summary judgment in favor of Dr. Parcinski.
 {¶ 25} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, P.J., concurs.
DeGenaro, J., concurs.
[1] Summary judgment was also granted for the co-defendants, East Liverpool City Hospital and Dr. Swift.