DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a summary judgment issued by the Lucas County Court of Common Pleas in a medical malpractice action. Because we conclude that the trial court abused its discretion in granting a motion in limine to exclude a medical expert's testimony and improperly granted summary judgment, we reverse. *Page 2 
 {¶ 2} Appellants, Kent M. Smith ("Smith") and his wife, Sharon, sued the following appellees alleging medical malpractice: ProMedica Health System, Inc. ("ProMedica"); Fostoria Community Hospital; ProMedica South Physicians, LLC; ProMedica Central Physicians, LLC; ProMedica Physician Group, Inc; Mohamed S. Salem, M.D; and Sudha Bansal, M.D. Appellants' claims stemmed from the post-operative treatment and complications which occurred after Dr. Salem performed abdominal surgery on Smith. Appellants alleged that appellees failed to properly administer a cough suppressant or to treat a post-operative cough he developed, causing separation and dehiscence of the surgical incision after he was discharged from the hospital.
 {¶ 3} After some discovery, appellees filed a motion in limine to exclude appellants' medical expert, Dr. Stephen R. Payne, from testifying at trial. Appellees argued Dr. Payne was not qualified to testify as to the standard of care applicable to appellees regarding post-surgical care in a hospital setting or as to proximate cause.
 {¶ 4} The trial court granted the motion in limine as to Dr. Payne's entire testimony. Subsequently, appellants filed a "motion for reconsideration" of the court's decision to strike the expert's testimony and appellees filed a motion for summary judgment. The trial court modified its first judgment, permitting Dr. Payne to testify as to information regarding cough medications, but restated that he was not qualified to testify as to the standard of care of a general surgeon, and attending or consulting physician in a hospital setting, or a registered nurse." *Page 3 
 {¶ 5} Appellants also filed a motion for summary judgment, which the trial court granted, on the basis that appellants had failed to provide expert testimony regarding the standard of care and sufficient evidence of proximate cause. The court also determined that appellants had failed to establish a prima facie case of negligence or causation under certain statutes.
 {¶ 6} Appellants now appeal from that judgment, arguing the following two assignments of error:
 {¶ 7} "First Assignment of Error
 {¶ 8} "The trial court committed reversible error in granting the motion in limine of defendant-appellees [sic] to exclude the expert testimony of Stephen R. Payne, M.D., on the issue of liability in the instant action.
 {¶ 9} "Second Assignment of Error
 {¶ 10} "The trial court erred to the prejudice of plaintiff-appellants [sic], Kent and Sharon Smith, in granting summary judgment on the issue of liability in favor of defendant-appellees [sic], Promedica Health System, Inc., Promedica South Physicians LLC, Promedica Central Physicians, LLC, Promedica Physician Group, Inc., Fostoria Community Hospital, Mohamed S. Salem, M.D., and Sudha Bansal, M.D."
 I. {¶ 11} In their first assignment of error, appellants assert that the trial court erred in granting appellees' motion in limine based on its determination that Dr. Payne did not *Page 4 
qualify as an expert witness regarding the standard of care for the administration of cough medications following a surgical procedure.
 {¶ 12} A motion in limine is designed "to avoid the injection into a trial of a potentially prejudicial matter which is not relevant and is inadmissible." Reinhart v. Toledo Blade Co. (1985), 21 Ohio App.3d 274,278. Thus, a trial court's decision on a motion in limine is to exclude or admit evidence, which is reviewed on appeal under an abuse of discretion standard. State v. Brewer, 6th Dist. No. E-01-053, 2003-Ohio-3423, ¶ 16, citing State v. Graham (1979), 58 Ohio St.2d 350.
 {¶ 13} In considering a motion in limine, the determination of whether a witness possesses the qualifications necessary to give expert testimony and introduce evidence also lies within the sound discretion of the trial court. Alexander v. Mt. Carmel Med. Ctr. (1978),56 Ohio St.2d 155, 157. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 14} According to Evid.R. 702, a witness may testify as an expert if all of the following apply:
 {¶ 15} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;(C) The *Page 5 
witness' testimony is based on reliable scientific, technical, or other specialized information. * * *"
 {¶ 16} Generally, a medical expert witness need only demonstrate a familiarity with the standard of care applicable to the defendant that is "sufficient to enable [the expert] to give an expert opinion as to the conformity of the defendant's conduct to those particular standards and not to the standards of the witness' school and, or, specialty if it differs from that of the defendant." Alexander, supra, at 160. The fact that the physician is of a different medical specialty does not prevent him or her from testifying as an expert, but the expert must have sufficient knowledge, skill, experience, training and education in the subject matter of his testimony to satisfy Evid.R. 702. See id., at 159-160 (scope of the witness's knowledge and not the artificial classification by title that should govern the threshold question of his qualifications; an expert witness need only aid the trier of fact in the search for the truth and need not be the best witness on the subject);Taulbee v. Dunsky, Butler App. No. CA2003-03-059, 2003-Ohio-5988, ¶ 15.
 {¶ 17} Where the fields of medicine overlap, a witness from a school or specialty other than that of the defendant physician may qualify as an expert witness if he demonstrates sufficient knowledge of the standards of the defendant's school and specialty enabling him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards. Alexander, supra, at 158-159. The test of admissibility is whether a particular witness offered as an expert will aid the trier of fact in the search of the truth, not whether the expert witness is the best witness on the *Page 6 
subject. Id. Thus, the admissibility of expert testimony must be made on a case-by-case basis, reviewing the medical expert's knowledge, skill, experience, training, and education. Taulbee, supra, at ¶ 21.
 {¶ 18} In this case, Dr. Payne testified that he is a board certified internist and acted as an attending physician for 20 years, providing post-operative care for his patients admitted to the hospital. He noted that only within the previous five years, because of time constraints and scheduling patients, had these duties been assigned to "hospitalists," doctors who only provide hospital care for patients. He further noted, however, that he was in close contact with those doctors when providing care for any of his own patients, discussing their treatment and follow-up on discharge.
 {¶ 19} Although Dr. Payne is not a surgeon, he did have basic surgical training in medical school. Moreover, the area of medicine for which his expert testimony was required was not for surgical techniques or procedures. Rather, as he noted in his proffered testimony, his opinions were offered as to proper drug prescription and administration for the treatment of coughs, a medical area covered by every licensed physician, as well as, registered nurses. He testified that he has treated post-operative patients after abdominal surgery and the standard of care was the same as for an internist or an attending physician working in a hospital. No testimony was offered to show that such a standard was, in fact different regarding post-operative drug administration than that provided by Dr. Payne or other internists. In fact, one of the appellees, Dr. Bansal, who treated Smith for his cough in the hospital, is an internist. *Page 7 
 {¶ 20} Dr. Payne's experience, training, and expertise clearly overlapped with those of the internist and attending surgical physician in this case, since both the internist and the surgeon would have the basic knowledge and training to address the treatment of an uncontrolled cough in a surgery patient following abdominal surgery. From his observations and expectations of hospital nurses, he also was familiar with the standard of care for nurses regarding "basic pharmacology and administration of drugs." Consequently, Dr. Payne's testimony and opinions were relevant and qualified as to the cause of Smith's injuries, propriety of the cough treatment, and the standard of care required of the physicians and nurses involved in Smith's hospital post-surgery care. Thus, we conclude that Dr. Payne demonstrated that he had some degree of knowledge, skill, experience, training, or education in the field he sought to render an expert opinion. Therefore, the trial court abused its discretion in deeming him unqualified to testify as an expert regarding appellants' medical claims and in granting the motion in limine to exclude his testimony.
 {¶ 21} Accordingly, appellants' first assignment of error is well-taken.
 II. {¶ 22} In their second assignment of error, appellants argue that the trial court erred in granting summary judgment regarding their claims. We agree.
 {¶ 23} A review of the trial court's granting of summary judgment is de novo, and thus, we apply the same standard as the trial court.Graf ton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment is proper when: (1) there is no genuine issue *Page 8 
as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made; that party being entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56(C);Leibreich v. A.J. Refrigeration, Inc. (1993), 67 Ohio St.3d 266, 268;Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66.
 {¶ 24} To prove a medical malpractice claim, a plaintiff must show by a preponderance of the evidence that he suffered an injury because of improper treatment or that the treatment administered fell below the recognized standards of medical care in the community. Bruni v.Tatsumi (1976), 46 Ohio St.2d 127, 131-132. Standards of the medical community are not common knowledge, so a plaintiff must prove causation through expert medical testimony. Roberts v. Ohio Pemanente MedicalGroup, Inc. (1996), 76 Ohio St.3d 483, 485.
 {¶ 25} A medical expert witness's use of words such as "could" and "possible" in assessing the proximate cause of a patient's injuries or death does not render that witness's testimony inadmissible in medical malpractice or negligence action. Ochletree v. Trumbull Mem. Hosp, 11th Dist. No. 2005-T-0015, 2006-Ohio-1006, ¶ 42-43. An expert witness is not required to use magic words, but rather the admissibility of testimony is dependent on whether witness's opinion is that the injury was more likely than not caused by a defendant's negligence. See State v.D'Ambrosio (1993), 67 Ohio St.3d 185, 191. *Page 9 
 {¶ 26} In this case, the trial court granted summary judgment because it had stricken Dr. Payne's testimony or opinions regarding the standard of care and causation. It also determined that Dr. Payne was qualified only as a family physician, and could not testify as to the standard of care required of a general surgeon, an attending or consulting physician in a hospital setting, or a registered nurse. In light of our disposition of appellants' first assignment of error, we need determine only whether the proffered testimony or affidavit established evidence of the standard of care, the breach of that standard, and the proximate cause of Smith's claimed injuries.
 {¶ 27} On proffer, Dr. Payne testified that he is very experienced in the post-operative prevention of wound dehiscence. He stated that he has seen and treated many post-surgery patients who have coughs, and one of the basic treatments is to suppress the cough. He noted that the knowledge that uncontrolled coughing is dangerous for a postoperative wound would have been basic to all medical professions, including physicians and nurses.
 {¶ 28} Dr. Payne testified that his opinion of what caused Smith's wound dehiscence was based upon his own experience, along with Smith's medical records which specifically described that as the cause. He noted that dehiscence is caused either by infection or by some kind of physical force. Dr. Payne noted that the medical records contained no evidence that Smith's wound was infected. He stated that, although Smith had a "prolonged ileus" which may have been a contributing factor, and since no other *Page 10 
physical force factor was found, the probable cause of the dehiscence was the uncontrolled cough.
 {¶ 29} Dr. Payne opined that Smith's cough should have been suppressed, but the treatment and cough medication which would have been appropriate for that was never administered to him. Dr. Payne further testified that he believed that the doctors involved breached the standard of care by either not prescribing the appropriate medication or by not looking at his medical records, to ensure that Smith was receiving the medication ordered. Dr. Payne acknowledged that he could not guarantee that a cough suppressant would have sufficiently stopped the coughing, since it was never administered. He explained, however, that if medication had not worked to adequately suppress the cough, then the treating doctors would have been under a duty to prescribe various other additional treatments, including corticosteroid treatment. Dr. Payne further stated that even before Smith was discharged from the hospital, the nurse's notes indicated clear signs of dehiscence, such as oozing from the staples and some separation of the wound. He noted that the hospital charts showed that, although the cough had not stopped, no further investigation as to cause or additional treatments occurred.
 {¶ 30} Based upon our review of the proffered testimony and Dr. Payne's initial affidavit, we conclude that, for the purposes of summary judgment, appellants presented sufficient, qualified expert testimony regarding the standard of care and proximate cause of Smith's wound dehiscence. Therefore, we further conclude that the trial court erred in *Page 11 
granting summary judgment, since genuine issues of material fact remain in dispute and appellees are not entitled to judgment as a matter of law.
 {¶ 31} Accordingly, appellants' second assignment of error is well-taken.
 {¶ 32} The judgment of the Lucas County Court of Common Pleas is reversed and remanded for proceedings consistent with this decision. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Arlene Singer, J. CONCUR. *Page 1