DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas in appellee's favor in a wrongful death and survival action involving allegations of *Page 2 
medical malpractice. For the following reasons, the judgment of the trial court is affirmed.
 {¶ 2} Appellants, Brett T. Zimmerman, D.O., and Bay Park Community Hospital, set forth the following assignments of error:
 {¶ 3} "I. The trial court erred in refusing to dismiss the survival claim, where plaintiff failed to bring a motion to substitute the personal representative within the 90-day period mandated by Civ. R. 25.
 {¶ 4} "II. The trial court erred in refusing to allow the jury to consider evidence of the amount accepted as full payment in determining the reasonableness and necessity of charges rendered for medical and hospital care, as such proofs are not barred by the collateral source rule under the rule announced in Robinson v. Bates, 112 Ohio St.3d 17,2006-Ohio-6362.
 {¶ 5} "III. The trial court abused its discretion in allowing late amendment of the complaint to add a wrongful death claim, requiring that the award of damages on that claim be vacated, and the matter remanded for dismissal with prejudice of that claim.
 {¶ 6} "IV. The trial court abused its discretion in allowing certified nurse midwife Chrzanowski to provide expert testimony regarding the standard of care of the hospital's nurses in monitoring for pre-term labor in a high risk patient, for which she was not shown by plaintiff to have a foundation for familiarity or expertise. *Page 3 
 {¶ 7} "V. The trial court abused its discretion in denying defendants' motion in limine to exclude the speculative causation testimony of plaintiff s expert Sharon Byrd, M.D., where the witness conceded she could not testify in terms of probability.
 {¶ 8} "VI. The trial court abused its discretion in refusing to instruct the jury regarding intervening superseding negligence, where the evidence raised such an issue with regard to the effect of the alleged subsequent negligence of the nurses, after Dr. Zimmerman left the hospital.
 {¶ 9} "VII. The jury interrogatories improperly joined negligence and proximate cause in a single interrogatory for each defendant, creating an unacceptable potential for jury confusion, for which a new trial should be granted.
 {¶ 10} "VIII. The trial court erred in denying Bay Park Community Hospital's motion for a directed verdict based on the lack of evidence establishing any agency/employment relationship between Bay Park and the care providers in this case, requiring dismissal of the claims against the hospital, and a new trial for Dr. Zimmerman."
 {¶ 11} The facts that are relevant to the issues raised on appeal are as follows. Appellee, Tabatha Smith, 35 weeks pregnant, presented to Bay Park Community Hospital on May 24, 2004, complaining of contractions and other related pain. She was admitted for observation at 10:30 a.m. and placed on a monitor to assess the fetal heart rate and the occurrence of any contractions. Appellant, Brett Zimmerman, D.O., examined Smith at 11:30 a.m. and found that her cervix was two centimeters dilated. Thereafter, Smith's *Page 4 
condition continued to be monitored by nurses. At 4:15 p.m., a nurse notified Dr. Zimmerman by phone that Smith complained of intermittent pain; she told the doctor that no contractions were evident by palpation or monitor. At 7:20 p.m., a nurse noted mild, irregular contractions and paged Dr. Zimmerman. The doctor advised to contact him if the contractions became regular. At 9:25 p.m., a nurse notified Dr. Zimmerman that the patient was uncomfortable but showed no signs of contractions. The doctor determined that a vaginal exam was not indicated. For the next several hours, Smith slept intermittently and complained of some pain. At 4:40 a.m., Smith complained of perineal pressure and a nurse discovered that her cervix was completely dilated. Dr. Zimmerman was immediately paged and arrived at the hospital by 5:06 a.m. The doctor then discovered that the baby was in a breech position with feet presenting first. The baby's body was delivered vaginally at 5:12 a.m.; the head was not delivered until four to six minutes later. Smith's baby, Ashton Carper, was resuscitated and transferred to Toledo Children's Hospital. The baby sustained severe brain damage and suffered from cerebral palsy, blindness and seizures. He died on January 3, 2006, at the age of 19 months.
 {¶ 12} Appellee filed a medical malpractice action on October 18, 2004, by Ashton Carper, a minor; by Tabatha Smith, his mother and next friend; and by Tabatha Smith individually. On April 17, 2006, appellee filed an amended complaint, substituting Ashton's estate as a party plaintiff and converting the case to a wrongful death and survival action. *Page 5 
 {¶ 13} The case proceeded to trial before a jury on April 24, 2006. On April 28, 2006, the trial court granted Smith leave to file the amended complaint instanter. Appellants' motion to dismiss the complaint was denied.
 {¶ 14} On May 4, 2006, the jury returned a verdict against defendants and in Smith's favor. A judgment entry was journalized May 16, 2006, awarding on the survival claim economic damages of $390,000 and non-economic damages of $500,000 and, on the wrongful death claim, the jury awarded compensatory damages to Smith of $2,000,000.
 {¶ 15} As their first assignment of error, appellants assert that the trial court erred by refusing to dismiss appellee's survival claim when she filed her motion to substitute the decedent's personal representative outside of the 90-day period set forth in Civ.R. 25.
 {¶ 16} The complaint in this case was filed in October 2004, when Ashton Carper was still alive. On January 11, 2006, eight days after Ashton's death, Smith's attorney filed a suggestion of death. At a pretrial conference held on April 7, 2006, Smith's counsel requested leave to amend the complaint orally since the trial date was near. At that time, counsel informed the court that she did not yet have the papers from probate court appointing Smith as personal representative. The trial court responded that an amended complaint had to be in writing and denied the request. On April 14, 2006, appellants filed a motion to dismiss the survival claim, arguing that appellee had failed to file a motion to substitute an estate for the deceased plaintiff within 90 days of the suggestion of death as required by Civ.R. 25. On April 17, 2006, which was 96 days *Page 6 
after the suggestion of death was filed, plaintiff filed an amended complaint substituting the estate as a party plaintiff and asserting survival and wrongful death claims. This issue was raised on the first day of trial and, after hearing arguments from both parties, the trial court denied the motion to dismiss.
 {¶ 17} This court considered the issue of a late filing under Civ.R. 25 in Johnson v. Welch (June 12, 1987), 6th Dist. No. L-86-347. InJohnson, the trial court dismissed plaintiffs' medical malpractice case with prejudice for failure to timely substitute a deceased party. In that case, counsel had filed the motion to substitute 13 days beyond the 90-day deadline. Upon review, however, this court found that the trial court had erred. In reaching that conclusion, this court considered Civ.R. 6(B), which provides for an exception to the strict 90-day limitation in Civ.R. 25(A) in cases where the failure to act was the result of excusable neglect, and Civ.R. 1(B), which states that the Ohio Rules of Civil Procedure are to be "* * * construed and applied to effect just results * * *." Further, this court noted inJohnson that the plaintiff was only 13 days beyond the 90-day limit and that there was no indication the defense had been prejudiced in any way by the delay. This court also was mindful of the fact that the case before it was a medical malpractice claim in which the alleged malpractice was claimed to have resulted in the death of the patient.
 {¶ 18} The case now before us bears similarities to Johnson in that it also is a medical malpractice action in which a patient died, the motion to substitute a party was filed only a few days beyond the deadline, and there is no indication that the defendants *Page 7 
were prejudiced by the delay. In accordance with the reasoning set forth in our decision in Johnson, we find that the trial court did not err by denying appellants' motion to dismiss. Accordingly, appellants' first assignment of error is not well-taken.
 {¶ 19} In their second assignment of error, appellants assert that the trial court erred by refusing to allow the jury to consider evidence of the amount of medical bills paid by Medicaid and welfare benefits, as well as any amount that was written off by the providers. In response, appellee acknowledges that this issue is controlled by the decision of the Ohio Supreme Court in Robinson v. Bates, 112 Ohio St.3d 17,2006-Ohio-6362, and agrees to accept as compensation for medical expenses the amount of $195,399.69. Accordingly, appellants' second assignment of error is well-taken.
 {¶ 20} In their third assignment of error, appellants assert that the trial court erred by allowing appellee to amend the complaint from malpractice to wrongful death. Appellants argue that appellee did not move to file the wrongful death claim and simply filed the amended complaint without leave of court.
 {¶ 21} A trial court's decision to allow or reject an amended complaint is discretionary and will not be disturbed on appeal absent a finding that the court abused its discretion in so doing. State, ex rel.Askew v. Goldhart, 75 Ohio St.3d 608, 610, 1996-Ohio-448. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1984), 5 Ohio St.3d 217, 219. In the case before us, there is no evidence of bad faith on appellee's part. Further, dismissal of the complaint would have *Page 8 
accomplished nothing other than a delay of the proceedings while appellee refiled. We also note that appellants were on notice that the action would become a wrongful death claim as of January 11, 2006, which was three months before trial, when appellee filed the suggestion of death. Based on the foregoing, we are unable to find that the trial court's decision to allow the amended complaint was unreasonable, arbitrary or unconscionable. Accordingly, appellants' third assignment of error is not well-taken.
 {¶ 22} In their fourth assignment of error, appellants assert that the trial court abused its discretion in allowing certified nurse midwife Maureen Chrzanowski to testify as an expert regarding the standard of care for obstetrical nurses. Appellants argue that Chrzanowski's testimony as to her background and qualifications failed to establish a basis for asserting familiarity with the standard of care for hospital nurses in a labor and delivery setting.
 {¶ 23} On the third day of trial, appellee presented the testimony of Maureen Chrzanowski as a medical expert. Chrzanowski testified that she graduated from nursing school in 1976, and went on to specialize in obstetrical nursing. She also holds a master's degree in nursing. Chrzanowski worked as a registered nurse in labor and delivery until 1983, when she went to midwifery school; she then took and passed the exam required for certification as a nurse midwife. Since that time, she has worked as a registered nurse and certified nurse midwife. At the time of trial, she was working as a nurse midwife at a medical practice in Grand Rapids, Michigan. She further testified that she is also certified as a family nurse practitioner and works part-time at a medical office which *Page 9 
provides primary care to people of all ages. She is certified in fetal monitoring and is a member of the faculty at the College of Nursing at Grand Valley State University, where she teaches obstetrical nursing. Chrzanowski testified that as a midwife she monitors women prenatally, attends labor and delivery and provides care after childbirth. She further testified that she has cared for and evaluated women in pre-term labor and has performed vaginal examinations on pregnant women in order to assess pre-term labor. She also has experience in assessing whether a woman is having contractions, as well as in determining the position of a baby prior to delivery.
 {¶ 24} After providing the background summarized above, Chrzanowski was asked if she was familiar with the standard of care for an obstetrical nurse in the state of Ohio in 2004. Counsel for appellants objected and the objection was overruled. Again, when Chrzanowski was asked if she had an opinion to a reasonable degree of medical certainty as to whether or not the obstetrical nursing was appropriate in this case, defense counsel objected. This objection was overruled and Chrzanowski continued to testify.
 {¶ 25} Evid.R. 702 provides that a witness may testify as an expert if all of the following apply:
 {¶ 26} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 27} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; *Page 10 
 {¶ 28} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information * * *."
 {¶ 29} A trial court's ruling on a witness's qualification or competency to testify as an expert will ordinarily not be reversed on appeal unless there is a clear showing that the court abused its discretion. Alexander v. Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155.
 {¶ 30} In Taulbee v. Dunsky, 12th Dist. No. CA2003-03-059, 2003-Ohio 5988, ¶ 16, a medical malpractice case wherein the defense questioned the qualifications of a witness presented as an expert by the plaintiff, the court stated that an expert witness need only aid the trier of fact in the search for the truth and need not be the best witness on the subject. See, also, Ishler v. Miller (1978), 56 Ohio St.2d 447.
 {¶ 31} Chrzanowski's testimony clearly set forth her many years of experience in the area of obstetrical nursing, including labor and delivery. Although no longer working in a hospital setting, her experience in the field of obstetrical nursing was ongoing at the time of trial. Upon review of the record, we find that Chrzanowski demonstrated that she had some degree of "specialized knowledge, skill, experience, training and education" in the field in which she sought to render an expert opinion.
 {¶ 32} Appellants also assert that Chrzanowski should not have been permitted to testify regarding liability on medical issues because she is not a physician. In support of this argument, appellants cite R.C.2743.43(A)(1) and (3). Appellants' argument is without merit. *Page 11 
 {¶ 33} Evid.R. 601(D) incorporates into the evidence rules on competency the provisions of R.C. 2743.43 regarding expert testimony on medical liability issues. A similar argument that a registered nurse was not competent to give expert testimony in a medical malpractice action brought against a hospital and treating physician was rejected inMorris v. Children's Hospital Medical Center (1991), 73 Ohio App.3d 437. The Morris court reasoned that the purpose of Evid.R. 601(D) is not to make proof of a claim more difficult, but to discourage expert testimony on the liability issues of a medical malpractice claim by a witness who has no first-hand knowledge of day-to-day patient care, and to insure that an expert witness has sufficient experience to assist the trier of fact in evaluating an alleged failure of care in a medical claim. Id. at 445. "To apply Evid. R. 601(D) to exclude expert testimony by a registered nurse on the liability issues of an action in respondeat superior against a hospital or a physician for the negligence of a nurse would in no way advance the purposes of the rule and would make proof of the claim unduly burdensome." Id. at 446. Morris concluded that "although Evid.R. 601(D) operates to preclude expert testimony by a registered nurse on the liability issues in an action against a physician or hospital for medical malpractice, the rule poses no impediment to expert testimony by a registered nurse on the liability issues in an action in respondeat superior against a hospital or physician for the negligence of a nurse." Id.
 {¶ 34} As in Morris, plaintiff retained Chrzanowski to testify as to alleged negligence of the hospital nurses in support of the claim against the hospital on the theory of respondeat superior. To exclude Chrzanowski's testimony on the basis of R.C. *Page 12 2743.43 and Evid.R. 601(D) would have subverted the purpose of the statute and the rule. Accordingly, this argument is without merit.
 {¶ 35} Based on the foregoing, we find that the trial court's decision to allow the testimony provided by Chrzanowski was not unreasonable, arbitrary or unconscionable and therefore not an abuse of discretion. Accordingly, appellants' fourth assignment of error is not well-taken.
 {¶ 36} In their fifth assignment of error, appellants assert that the trial court erred by denying their motion in limine to exclude the testimony from one of plaintiff s expert witnesses, a pediatric neuroradiologist, because the witness could not testify in terms of probability. Defendants argued in the trial court that Dr. Sharon Byrd's opinions, first given at deposition, were inadmissible because they were not held to a reasonable degree of medical probability.
 {¶ 37} A motion in limine is designed "to avoid the injection into a trial of a potentially prejudicial matter which is not relevant and is inadmissible." Reinhart v. Toledo Blade Co. (1985), 21 Ohio App.3d 274,278. Thus, a trial court's decision on a motion in limine is to exclude or admit evidence and is reviewed on appeal under an abuse of discretion standard. Smith v. ProMedica Health System, Inc., et al, 6th Dist. No. L-06-1333, 2007-Ohio-4189, ¶ 12.
 {¶ 38} Appellants' motion in limine was denied by the trial court four days prior to trial. It is undisputed that appellants failed to renew their objection when Dr. Byrd was *Page 13 
called to testify. Appellants now argue that it would have been "futile" to raise the issue at trial, only a few days after the motion was denied.
 {¶ 39} A preliminary ruling on a motion in limine is "`a tentative, interlocutory, precautionary ruling * * * [and] finality does not attach when the motion is granted.'" Dent v. Ford Motor Co. (1992),83 Ohio App.3d 283, 286, quoting State v. Grubb (1986), 28 Ohio St.3d 199. Thus, the ruling on a motion in limine does not preserve the record on appeal and an appellate court will not rule on the propriety of a motion in limine unless the introduction of the evidence, in this case expert testimony, is also made during trial, and a final ruling is obtained.Gable v. Vill. of Gates Mills, 103 Ohio St.3d 449, 2004-Ohio-5719, ¶ 34. See, also, Goodenow v. Carbone (Dec. 13, 1993), 11th Dist. No. 93-L-061 (finding that consideration of the grant of a motion in limine excluding a physician's testimony was foreclosed because the appellant did not seek to introduce that testimony at trial). Therefore, because appellants failed to object to Dr. Byrd's testimony at trial and obtain a final ruling on this evidentiary matter, they have waived all but plain error. Gable at ¶ 43.
 {¶ 40} The plain error doctrine originated as a criminal law concept and concerns plain errors or defects affecting substantial rights which may be noticed although not brought to the attention of the court.Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 209. In civil cases, applying the doctrine of plain error is not favored. Reviewing courts must proceed with the "utmost caution" and can reverse a jury verdict in a civil case on the basis of plain error only in those "extremely rare" cases that involve *Page 14 
"exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself" Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 122-123, 1997-Ohio-401. See, also,Gable, supra, at ¶ 43. A review of the case before us reveals that it is not that kind of case. Even assuming that the trial court's decision was in error, such error — to wit, allowing the testimony of Dr. Byrd — could not reasonably be characterized as seriously affecting the basic fairness, integrity, or public reputation of the judicial process, and, thus, would not rise to the level required for the application of the plain error doctrine.
 {¶ 41} Accordingly, because appellants' fifth assignment of error was not preserved for appeal, it is necessarily found not well-taken.
 {¶ 42} In their sixth assignment of error, appellants assert that the trial court erred by denying their request to instruct the jury on the defense of intervening superseding cause. Appellants argue that because several hospital nurses cared for Smith for 18 hours following the doctor's initial examination, the jury could have concluded that the nurses' failure to perform a vaginal examination to assess whether Smith was in labor releases the doctor from any responsibility for his failure to perform another vaginal exam to determine whether she was in labor. Appellants claim that Smith's allegations that the nurses were negligent during the hours Dr. Zimmerman was not present could have been found by a properly instructed jury to be an intervening superseding cause. *Page 15 
 {¶ 43} The record reflects that appellants submitted two written sets of proposed jury instructions to the trial court. The first set was submitted on April 14, 2006, and the second set was submitted on May 1, 2006. Both sets of proposed instructions contained language addressing intervening superseding cause. The record also reflects that counsel met with the trial court prior to the close of testimony to discuss jury instructions. At that time, the court noted that the defense had requested an instruction on intervening superseding cause. Defense counsel argued that Dr. Zimmerman had been "taken out of the loop" and prevented from making decisions by the nurses, who were themselves negligent. Counsel for plaintiff responded that the conduct of Dr. Zimmerman and the nurses was "inextricably intertwined," leaving the chain of causation intact. The trial court indicated it would consider the request. The trial court's instruction to the jury on causation did not include the language requested by appellants as to intervening superseding cause.
 {¶ 44} Generally, requested jury instructions should be given if they are a correct statement of the law as applied to the facts in a given case. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585. "* * * [A] court's instructions to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings."State v. Guster (1981), 66 Ohio St.2d 266, 271. Further, a determination as to jury instructions is a matter left to the sound discretion of the trial court. Id. "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of an * * * instruction, an appellate court should determine whether the record contains evidence *Page 16 
from which reasonable minds might reach the conclusion sought by the instruction." Feterle v. Huettner (1971), 28 Ohio St.2d 54, at syllabus.
 {¶ 45} The rule of law applicable to the intervening superseding cause defense was explained in Berdyck v. Shinde (1993), 66 Ohio St.3d 573,1993-Ohio-183, ¶ 48-49, which involved a doctor's alleged medical malpractice subsequent to prior malpractice on the part of a hospital:
 {¶ 46} "The intervention of a responsible human agency between a wrongful act and an injury does not absolve a defendant from liability if that defendant's prior negligence and the negligence of the intervening agency co-operated in proximately causing the injury. If the original negligence continues to the time of the injury and contributes substantially thereto in conjunction with the intervening act, each may be a proximate, concurring cause for which full liability may be imposed. `Concurrent negligence consists of the negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence, in producing a single indivisible injury.' [Citation omitted.]
 {¶ 47} "In order to relieve a party of liability, a break in the chain of causation must take place. A break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency which could or should have eliminated the hazard. [Citations omitted.] However, the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury." *Page 17 
 {¶ 48} We find that the evidence in this case did not warrant a jury instruction on intervening superseding cause. The actions of the nurses did not intervene so as to absolve Dr. Zimmerman from liability for his failure to order them to perform a vaginal exam on Smith at any time throughout the night.
 {¶ 49} It is undisputed that Nurse Bunker performed a vaginal exam at 10:30 a.m. when Smith when arrived at the hospital. Dr. Zimmerman was called to the hospital and at 11:30 a.m. he performed a vaginal exam and determined that Smith's cervix was dilated to two centimeters. For the following 18 hours, Smith was cared for by a series of nurses as they came and went on their shifts. During that time, the nurses had repeated verbal contact with Dr. Zimmerman. The evidence shows that at 4:15 p.m., Nurse Sexton gave the doctor an update by phone and asked him if he wanted her to examine Smith vaginally; the doctor indicated he did not. At 7:20 p.m., Sexton called Dr. Zimmerman again reporting mild, irregular contractions; the doctor told her to call him if Smith's contractions became regular. At 9:25 p.m., Nurse Braden called the doctor and told him Smith and some of her family members wanted her to examine Smith vaginally to see if she had dilated further; Dr. Zimmerman did not order a vaginal exam at that time.
 {¶ 50} Ohio courts have held that the causal connection between the initial negligence is broken and superseded by later negligence only if the latter act is both "new" and "independent." See Celmer v.Rogers, 11th Dist. No. 2004-T-0074, 2005-Ohio-7054. The nurses' negligence was not a new and independent act sufficient to constitute an intervening superseding cause of the baby's injuries. To the contrary, the *Page 18 
evidence before the jury showed that the doctor and nurses cooperated in proximately causing the injuries in this case. The evidence pointed to negligence which concurred "not necessarily in point of time, but in point of consequence, in producing a single, indivisible injury."Berdyck, supra, ¶ 48.
 {¶ 51} Based on the law as set forth above and our review of the record, we do not find sufficient evidence that the nurses' actions broke the causal chain between Dr. Zimmerman's actions and appellee's injuries to justify an instruction to the jury on intervening superseding cause. The trial court's decision not to provide the requested instruction was not unreasonable, arbitrary or unconscionable and therefore not an abuse of discretion. Appellants' sixth assignment of error is not well-taken.
 {¶ 52} In their seventh assignment of error, appellants assert that the jury interrogatory on medical negligence, taken directly from Ohio Jury Instruction 331.17, improperly combined the elements of negligence and proximate cause and thereby created such a potential for jury confusion that a new trial is required.
 {¶ 53} In a discussion in chambers following the close of all evidence, counsel and the court reviewed final interrogatories to be given the jury. At that time, defense counsel objected to the interrogatory the court planned to give regarding negligence and proximate cause, stating that it "clumps" the two together without allowing the jury to make a determination as to one before considering the other.
 {¶ 54} Interrogatory No. 1, as given to the jury, reads as follows: "Was the Defendant, Brett Zimmerman, D.O., negligent and did that negligence directly and *Page 19 
proximately cause any injury to Ashton Carper?" Interrogatory No. 2 was identically worded but substituted "Bay Park Community Hospital, by and through any of the nurses," after "Defendant."
 {¶ 55} The record reflects that appellants timely submitted four proposed interrogatories on the issues of negligence and proximate cause. The first stated: "Do you find proven by a preponderance of the evidence that the defendant, Brett T. Zimmerman, D.O., was negligent in the care and treatment provided to the plaintiffs?" The second stated: "If your answer to Interrogatory Number 1 is `Yes,' do you find proven by a preponderance of the evidence that the proven negligence of the defendant, Brett T. Zimmerman, D.O., directly and proximately caused any damage to the plaintiffs?" Interrogatories Nos. 3 and 4 were identically worded as to "* * * defendant Bay Park Community Hospital, by and through its agents. * * *."
 {¶ 56} Civ.R. 49(B) reads in relevant part: "The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law." *Page 20 
 {¶ 57} A trial court's decision concerning a jury interrogatory is reviewed according to an abuse of discretion standard. Freeman v.Norfolk W. Ry. Co. (1994), 69 Ohio St.3d 611, 614.
 {¶ 58} Although Civ.R. 49 provides that the court "shall" submit written interrogatories upon the request of a party, it does not require that the court act as a "mere conduit who must submit all interrogatories counsel may propose." Phillips v. Dayton Power LightCo. (1996), 111 Ohio App.3d 433, 441, quoting Ramage v. Cent. OhioEmergency Serv., Inc. (1992), 64 Ohio St. 3d 97, 107. Contrary to appellants' claim, there is no requirement that a single interrogatory address only a single issue of law or fact. See, e.g.,Phillips, supra.
 {¶ 59} In the case before us, the trial court submitted an interrogatory on negligence and proximate cause as to each defendant. Appellants argue on appeal that the interrogatories created a "potential" for confusion but do not articulate any credible argument that the jury actually was confused. There is no indication in the record that the jury was confused by the interrogatories; the jury deliberated without asking any questions. Based on the foregoing, we find that the trial court did not abuse its discretion by submitting to the jury the interrogatories set forth above. Accordingly, appellants' seventh assignment of error is not well-taken.
 {¶ 60} In their eighth assignment of error, appellants assert the trial court erred by denying Bay Park Community Hospital's motion for a directed verdict based on a lack of *Page 21 
evidence establishing an agency/employment relationship between the hospital and the nurses who provided care for Smith during labor and delivery.
 {¶ 61} In deciding whether to grant a motion for a directed verdict, the trial court does not weigh the evidence or consider the credibility of the witnesses, but rather reviews and considers the sufficiency of the evidence as a matter of law. Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66. Because a motion for a directed verdict presents a question of law, we review this assignment of error de novo.Goodyear Tire Rubber Co. v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512,2002-Ohio-2842, ¶ 4.
 {¶ 62} Directed verdicts are governed by Civ.R. 50(A)(4), which sets out the standard for granting such a motion:
 {¶ 63} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 64} Relative to the question of whether an employment relationship existed between the hospital and the nurses who cared for Smith, we need only look to the testimony of the three nurses. Nurse Sexton testified that on May 24, 2004, she was employed by Bay Park Community Hospital as a staff nurse in labor and delivery. Nurse Braden testified that on that date, she was employed at Bay Park Community Hospital in *Page 22 
the labor and delivery unit. Nurse Bunker testified that on that date, she was employed as a staff nurse at Bay Park Community Hospital in the obstetrics unit.
 {¶ 65} Based on the foregoing, we find that the three nurses were employed by defendant Bay Park Community Hospital on the date in question and were acting as the hospital's agents/employees. We therefore are unable to say that reasonable minds could come to but one conclusion upon the evidence submitted, that evidence being adverse to the plaintiff. Accordingly, the trial court did not err by denying the motion for a directed verdict and appellants' eighth assignment of error is not well-taken.
 {¶ 66} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. This matter is remanded to the trial court for further proceedings in accordance with our finding in Assignment of Error No. II as to the monetary amount appellee has agreed to accept as compensation for medical expenses. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 23 
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Thomas J. Osowik, J., CONCUR. *Page 1